UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DIANE ROSE PETERSON,

       Plaintiff,

v.                                                                                                             Case No. 17-C-1686

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

---

## DECISION AND ORDER

---

Plaintiff Diane Peterson filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. Peterson contends that the administrative law judge's (ALJ) decision, which became the final decision of the Commissioner, is flawed, requiring remand for two reasons: (1) the ALJ impermissibly relied on Peterson's remarks regarding her activities of daily living and took them out of context; and (2) the ALJ's alternative finding that Peterson would not be disabled under a residual functional capacity (RFC) limiting her to only sedentary work was unjustified because the ALJ and vocational expert (VE) did not identify valid transferable special skills. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

In July of 2014, Peterson filed a Title II application for disability insurance benefits, alleging that her disability began on January 15, 2011. R. 14. Peterson was last insured on June 30, 2012. R. 16. She listed a shattered right ankle, depression, frozen shoulder syndrome, blood disease, as

well as back and lower neck problems as the conditions that limited her ability to work. R. 263.

Following the denial of her application, both initially and on reconsideration, Peterson requested a hearing before an ALJ. On May 10, 2017, ALJ Joseph R. Doyle conducted a video hearing where Peterson, who was represented by counsel, and a VE testified. R. 31–49.

At the hearing, Peterson testified that she severely injured her right ankle on June 16, 2012, when she fell off of an ATV. R. 32–34. As a result, Peterson had two surgeries to repair her ankle, was in a cast for six or seven months, and participated in physical therapy for up to a year. R. 34–35. Peterson testified that, as a result of the injury, she has difficulties walking and maintaining her balance, cannot put pressure or stand on her right foot, and that putting most of the pressure on her left leg has started to cause her back and hip pain. R. 35–36.

Peterson was also seeing a doctor for issues related to her neck starting around March of 2011. R. 36, 38. Peterson testified that her neck issues started with pain, trembling, and numbness that spread down her left arm into her fingers. R. 37. An MRI showed that a disc was protruding into her spinal cord. *Id.* Peterson stated that she received steroids for treatment, still had difficulties rotating her neck, and that eventually her condition would require surgery. R. 37–39.

In a written decision dated June 29, 2017, the ALJ concluded Peterson was not disabled for the period between her alleged onset date and her date last insured. R. 14–23. Following the agency's five-step sequential evaluation process, the ALJ concluded that Peterson had not engaged in substantial gainful activity from her alleged onset date through her date last insured. R. 16. At step two, the ALJ found Peterson had the following impairments: degenerative disc disease, degenerative joint disease of the right shoulder, and status post right ankle fracture. *Id.* At step three, the ALJ determined Peterson's impairments or combination of impairments did not meet or

medically equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17. At step four, the ALJ concluded Peterson had the RFC to perform light work through the date last insured except she "could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs and occasionally engage in activities requiring balance." R. 18. The ALJ also found that Peterson was capable of performing past relevant work as an operator of a bar and bartender through the date last insured. R. 21. At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Peterson could have performed, such as assembler, food sorter, and polisher. R. 21–23. Based on these findings, the ALJ concluded Peterson was not disabled within the meaning of the Social Security Act from the alleged onset date through the date last insured. R. 23. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Peterson's request for review. Thereafter, Peterson commenced this action for judicial review.

**LEGAL STANDARD**

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Peterson contends that the ALJ improperly relied on her self-reported activities of daily living in finding that she was capable of light work in her RFC. In particular, Peterson asserts that "[t]he ALJ improperly extrapolated fragments of the facts toward the ability to work an entire eight hour day." Pl.'s Br., ECF No. 8 at 4. Though an ALJ must consider the claimant's daily activities as one of the factors in evaluating the intensity and persistence of pain, 20 C.F.R. § 404.1529(c)(3)(I), "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has chastised ALJs for finding that a claimant can work a full-time job simply because she can perform certain activities at home. *See Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014).

Here, the ALJ's consideration of Peterson's reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms was entirely reasonable and consistent with the SSA's rulings and regulations. The ALJ's findings were well supported by the medical records that recounted her progress over the year following her accident

4

that included her own accounts of what she was able to do. Regarding Peterson's upper extremities, the ALJ noted that Peterson reported "doing a lot of manual labor with yard work and so forth outside," and found that Peterson's "acknowledgement of performing a lot of manual labor in spite of such impairments," combined with the "lack of consistent clinical signs in restriction in shoulder, back, or neck motion," "supports the conclusion that the claimant retained the ability to perform work within the residual functional capacity." R. 19. The ALJ also found that Peterson's statements to her medical providers that she was "very active," spending "a lot of the past few days working out in the yard and on her feet," and that "she was able to resume her normal activities," contradicted her statements regarding the severity of pain or limitation. R. 20. Contrary to Peterson's assertion, these statements were not cherry-picked, but rather a part of a 4-month period starting in March of 2013 where both her statements and the medical records consistently showed that her ankle was not disabling but was improving in response to treatment and physical therapy, enabling Peterson to return to normal activity levels albeit with occasional swelling and pain in response to high levels of activity. R. 20, 551–78. The objective assessments in Peterson's medical records during this time also reflect her self-reported improvement in her ankle. R. 551–78. Her reports of improvement are further corroborated by the lack of significant treatment for, or complaints about, her ankle after June of 2013. Consequently, the ALJ did not improperly rely on Peterson's reported activities of daily living. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities [the claimant] performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in [the claimant's] medical records regarding her ability to engage in activities of daily

living undermined [the claimant's] credibility when describing her subjective complaints of pain and disability.").

Although Peterson contends that the ALJ erred in finding that she would still be denied benefits even if restricted to sedentary work, any error by the ALJ in this alternative RFC is inconsequential. In his written decision, the ALJ stated the following:

> The undersigned also notes that, assuming arguendo, that the claimant was further restricted to sedentary exertional work, the claimant had transferable skills from her bartending managerial work to several sedentary occupations (as the vocational expert detailed at the hearing) and would still have been denied disability benefits.

R. 23. There is no need, however, to address any potential issues with this alternative finding because the ALJ's primary RFC assessment that Peterson should be restricted to light work with additional restrictions is supported by substantial evidence in the record. This is reason enough to affirm the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  21st  day of March, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court